THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* PAUL HEISE, Plaintiff in Error.

*Opinion filed February 20, 1913.*

1. CONSTITUTIONAL LAW—*section 2 of the schedule, concerning fines and penalties, construed.* Section 2 of the schedule in the constitution of 1870, providing that "all fines, taxes, penalties and forfeitures, due and owing to the State of Illinois under the present constitution and laws, shall inure to the use of the people of the State of Illinois, under this constitution," is merely a saving clause saving to the State all fines, taxes, penalties and forfeitures then due and owing to the State, and applies to nothing else.

2. SAME—*Wife Abandonment act does not delegate legislative power to the courts.* In the Wife Abandonment statute the legislature has indicated the extent of the punishment, and the fact that the court is empowered to impose a fine as in other cases of misdemeanor, or to require the defendant, by way of punishment, to pay a stipulated sum per week to the abandoned wife, does not amount to a delegation of legislative power to the courts, in violation of the constitution.

3. SAME—*section 1 of Wife Abandonment act does not violate section 20 of article 4 of constitution.* Section 20 of article 4 of the constitution was intended to prohibit the legislature from making any appropriation to pay the debts of any corporation, association or individual, or to pledge the credit of the State for such debts, or in aid of any corporation, association or individual, but it was not intended to affect the disposition to be made of penalties inflicted for the violation of criminal statutes, and section 1 of the Wife Abandonment act does not violate such provision.

4. SAME—*the Wife Abandonment act does not violate the provision against remitting fines.* The Wife Abandonment act does not violate that clause of section 22 of article 4 of the constitution providing that no special or local law shall be passed remitting fines or penalties, as such clause merely prohibits the legislature itself from remitting any particular fine, penalty or forfeiture which has been inflicted or has become due.

5. SAME—*the Wife Abandonment act does not deprive defendant of jury trial or of liberty or property without due process of law.* The Wife Abandonment act does not violate section 2 of article 2 of the constitution, providing that no person shall be deprived of liberty or property without due process of law, nor section 5 of article 2, which provides that the right of jury trial as heretofore enjoyed shall remain inviolate, as such statute gives a

defendant the right to have the question of his guilt submitted to a jury of his peers, and he cannot be convicted except as the result of a trial under due form of law.

6. SAME—*right of jury trial extends only to question of guilt or innocence.* The right of trial by jury in criminal cases extends only to the question of the guilt or innocence of the accused, and does not extend to the question of the punishment that may be inflicted by the court after a verdict of guilty.

7. SAME—*Wife Abandonment act does not violate provision of constitution against imprisonment for debt.* Section 1 of the Wife Abandonment act is not in violation of section 12 of article 2 of the constitution, providing against imprisonment of a person for debt.

8. SAME—*when question that statute is invalid, as authorizing double punishment, cannot be raised.* The question that a statute is invalid because it authorizes a double punishment for the same offense, at the option of the trial judge, cannot be raised by a defendant who has received but one punishment and is therefore not injured by the alleged invalid provision of the statute.

9. SAME—*power of the legislature to authorize the court to suspend sentence.* The Wife Abandonment act is not invalid as authorizing the court to suspend sentence, as it is within the power of the legislature to empower the courts, in certain classes of cases, to suspend sentence upon the defendant entering into a recognizance and thereafter impose sentence and enforce its execution.

10. WIFE ABANDONMENT—*Statute of Limitations runs against the offense of wife abandonment.* To constitute wife abandonment there must be the overt act of abandonment and the neglect and refusal to maintain and provide for the wife, and hence, after the abandonment has taken place, the crime becomes complete upon the neglect and refusal to provide for the wife, and the Statute of Limitations begins to run when the two elements concur.

11. SAME—*what is necessary to constitute a second abandonment.* Under the statute abandonment is an overt act accomplished by the desertion of the wife, and before a husband can be guilty of a second abandonment he must first return to the wife and resume the marital relation.

WRIT OF ERROR to the Municipal Court of Chicago; the Hon. WILLIAM N. GEMMILL, Judge, presiding.

THOMAS E. SWANSON, and RICHARD S. COONEY, for plaintiff in error.

W. H. STEAD, Attorney General, JOHN E. W. WAY-MAN, State's Attorney, and D. B. SNOW, (WILLIAM R. FETZER, of counsel,) for the People.

Mr. JUSTICE COOKE delivered the opinion of the court:

Plaintiff in error, Paul Heise, was convicted in the municipal court of Chicago of the crime of wife abandonment, under section 1 of an act making it a misdemeanor to abandon and willfully neglect to provide for the support and maintenance by any person of his wife or of his or her minor children in destitute or necessitous circumstances, approved May 13, 1903, in force July 1, 1903. After overruling motions for a new trial and in arrest of judgment the court entered an order requiring plaintiff in error to pay his wife the sum of eight dollars per week for the period of one year, and plaintiff in error having entered into the recognizance provided for by the statute, was released from custody on probation for the space of one year. Plaintiff in error has sued out a writ of error from this court to review this judgment and numerous reasons are urged for its reversal. We deem it necessary to notice but two of the assignments of error: First, that said section 1 of the Wife Abandonment act is unconstitutional; and second, that this prosecution is barred by the Statute of Limitations.

The section of the statute involved is as follows: "That every person who shall, without good cause, abandon his wife and neglect and refuse to maintain and provide for her, or who shall abandon his or her minor child or children, under the age of twelve years, in destitute or necessitous circumstances, and willfully neglect or refuse to maintain or provide for such child or children, shall be deemed guilty of a misdemeanor and on conviction thereof shall be punished by a fine of not less than $100 or more than $500, or by imprisonment in the county jail, house of correction or workhouse not less than one month

or more than twelve months, or by both such fine and imprisonment; and should a fine be imposed it may be directed by the court to be paid, in whole or in part, to the wife, or to the guardian or custodian of the minor child or children: *Provided,* that before the trial (with the consent of the defendant,) or after conviction, instead of imposing the punishment hereinbefore provided, or in addition thereto the court in its discretion, having regarded the circumstances and financial ability of the defendant, shall have the power to pass an order, which shall be subject to change by it from time to time as the circumstances' may require, directing the defendant to pay a certain sum weekly for one year to the wife, guardian or custodian of the minor child or children, and to release the defendant from the custody, on probation, for the space of one year upon his or her entering into a recognizance, with or without sureties, in such sums as the court may direct. The conditions of the recognizance shall be such that if the defendant shall make his or her personal appearance in court whenever ordered to do so within a year, and shall further comply with the terms of the order, then the recognizance shall be void, otherwise of full force and effect. If the court be satisfied by information and due proof, under oath, that at any time during the year the defendant has violated the terms of such order, it may forthwith proceed with the trial of the defendant under the original indictment, or sentence him or her under the original conviction, as the case may be. In a case of forfeiture of a recognizance and enforcement thereof by execution, the sum recovered may, in the discretion of the court, be paid in whole or in part to the wife, guardian or custodian of the minor child or children."

It is contended that this statute violates nine separate provisions of the constitution, namely, section 2 of the schedule, sections 1, 16, 17, 20 and 22 of article 4, and

sections 2, 5 and 12 of article 2. These provisions of the constitution are as follows:

Section 2 of the schedule: "That all fines, taxes, penalties and forfeitures, due and owing to the State of Illinois under the present constitution and laws, shall inure to the use of the people of the State of Illinois, under this constitution."

Section 1 of article 4: "The legislative power shall be vested in a General Assembly, which shall consist of a senate and house of representatives, both to be elected by the people."

Section 16 of article 4: "The General Assembly shall make no appropriation of money out of the treasury in any private law. Bills making appropriations for the pay of members and officers of the General Assembly, and for the salaries of the officers of the government, shall contain no provision on any other subject."

Section 17 of article 4: "No money shall be drawn from the treasury except in pursuance of an appropriation made by law, and on the presentation of a warrant issued by the auditor thereon; and no money shall be diverted from any appropriation made for any purpose, or taken from any fund whatever, either by joint or separate resolution. The auditor shall, within sixty days after the adjournment of each session of the General Assembly, prepare and publish a full statement of all money expended at such session, specifying the amount of each item, and to whom and for what paid."

Section 20 of article 4: "The State shall never pay, assume or become responsible for the debts or liabilities of, or in any manner give, loan or extend its credit to or in aid of any public or other corporation, association or individual."

Section 22 of article 4: "The General Assembly shall not pass local or special laws in any of the following enu-

merated cases, that is to say: For * * * remitting fines, penalties or forfeitures."

Section 2 of article 2: "No person shall be deprived of life, liberty or property, without due process of law."

Section 5 of article 2: "The right of trial by jury as heretofore enjoyed, shall remain inviolate; but the trial of civil cases before justices of the peace by a jury of less than twelve men may be authorized by law."

Section 12 of article 2: "No person shall be imprisoned for debt, unless upon refusal to deliver up his estate for the benefit of his creditors, in such manner as shall be prescribed by law, or in cases where there is strong presumption of fraud."

Section 2 of the schedule is clearly a saving clause inserted in the constitution, saving to the State all fines, taxes, penalties and forfeitures then due and owing to the State, and applies to nothing else. This statute in nowise affects any fines, taxes, penalties or forfeitures which were due and owing to the State of Illinois at the time of the adoption of the constitution of 1870.

The ground upon which it is claimed the act violates section 1 of article 4 is, that legislative power has been delegated to the courts in cases of this kind. This contention is without force. Under an indictment or an information charging a person with the crime of wife abandonment he is tried as in other misdemeanor cases and the punishment is inflicted by the court. The legislature has indicated the extent of the punishment, and the court is given an option whether to inflict a fine, as in other cases of misdemeanor, or to require the defendant, by way of punishment, to pay a certain stipulated sum per week to the abandoned wife. This does not vest the courts with legislative powers, and the statute is not subject to this criticism.

We are unable to appreciate the point sought to be made by counsel in reference to sections 16 and 17 of arti-

cle 4. The statute under consideration in nowise has to do with the appropriation of any money by the legislature out of any of the funds of the State or with the manner in which money shall be drawn from the treasury of the State.

The chief contention of counsel on the question of the constitutionality of this statute seems to be that it violates section 20 of article 4. That provision of the constitution was meant to prohibit the legislature from making any appropriation to pay the debts of any corporation, association or individual, or to pledge the credit of the State for the payment of such debts, or in aid of any corporation, association or individual. It was clearly not intended by this section to affect in any manner the disposition to be made of penalties inflicted for the violation of our criminal statutes, and section 1 of the Wife Abandonment act does not violate this section of the constitution.

That clause of section 22 of article 4 which is invoked simply provides that no special or local laws shall be passed remitting fines, penalties or forfeitures, and clearly means that the legislature shall not have the power to remit any particular fine, penalty or forfeiture which had been inflicted or has become due. If it could be said that by this statute the court is expressly authorized to remit a fine this section of the constitution would not be violated, as it applies solely as an inhibition of such action by the legislature.

As this section of the statute gave to plaintiff in error the right to be tried and to submit to a jury of his peers the question of his guilt or innocence, and as a conviction cannot be had except as the result of a trial under due form of law, it cannot be said that it violates section 2 of article 2. For the same reason it does not violate section 5 of article 2. This statute insures to one accused the same right of trial by jury as was enjoyed at the time of the adoption of the constitution of 1870. The defendant is given the right to submit to a jury the question of his guilt or innocence, and it is only in case the jury find him

257 — 29

guilty that the court is empowered to inflict any punishment. The mere fact that in this class of cases the legislature has seen fit to empower the court, in its discretion, to inflict a punishment differing from that inflicted in other cases of misdemeanor does not affect the right of the defendant to a trial by jury. That right extends only to the question of the guilt or innocence of the defendant and does not extend to the question of the punishment that may be inflicted by the court after a verdict of guilty.

Nor is this section of the statute open to the criticism that it authorizes an imprisonment for debt. In this respect it is similar to every other provision of our criminal statutes which provide as punishment for certain crimes that the person convicted may be fined or imprisoned or may be fined and committed to jail until such fine is paid. The act, therefore, is not in violation of section 12 of article 2.

It is thus seen that this act is not invalid as a violation of any of the provisions of the constitution above specified.

It is further contended that the act is invalid in that it provides for a double punishment for the same offense, at the option of the trial judge. Plaintiff in error has not been aggrieved in this respect as but one punishment was inflicted upon him, and that question will not be considered.

It is further contended that the statute is invalid because it authorizes the court to suspend sentence for an indefinite period of time, and the cases of *People* v. *Allen,* 155 Ill. 61, and *People* v. *Barrett,* 202 id. 287, are relied upon. As was said in those cases, the court cannot lawfully impose sentence after the same has been indefinitely suspended and a long period of time has elapsed, but we know of no reason why the legislature may not give the courts the power, in certain classes of cases, to suspend sentence upon the defendant entering into a recognizance and thereafter impose sentence and enforce its execution.

It is contended by plaintiff in error that wife abandonment is a misdemeanor, against which the Statute of Limitations runs in one year and six months, while, on the other hand, it is the contention of counsel for the People that this is a continuing offense and cannot be barred by the statute so long as the abandonment and failure to support continue.  By the statute two elements are required to constitute the offense: the act of abandonment and the neglect and refusal to maintain and provide for the wife. The act of abandonment can occur but once, and, after that has taken place, immediately upon the neglect and refusal to maintain and provide for the wife the crime becomes complete and the Statute of Limitations begins to run.  The continued neglect and refusal, from day to day, to maintain and provide for the wife do not constitute the commission of another offense, as that conduct must coincide with an act of abandonment before it becomes a crime. Abandonment is an overt act, accomplished under this statute by the desertion of the wife.  Before he could be guilty of a second abandonment the husband must first return to his wife and resume the marital relation.  It was a controverted question of fact in this case whether plaintiff in error abandoned his wife or whether she left him and refused to live and cohabit with him, but as the jury found him guilty of the crime charged, this question of fact was determined against the contention of the plaintiff in error. The fact disclosed by this record is that plaintiff in error and his wife have not lived or cohabited together since March, 1906, and plaintiff in error has since that time neglected and refused to maintain and provide for his wife. The abandonment, therefore, occurred at that time.  As this prosecution was begun in September, 1912, it was barred by the Statute of Limitations.

The information charged the abandonment as having taken place on September 1, 1912.  At the close of the People's case, and after the testimony disclosed that the

abandonment took place in March of 1906, plaintiff in error moved for a directed verdict upon the ground that the prosecution was barred by the Statute of Limitations. This motion was renewed at the close of all the evidence and was in each instance denied. The court erred in refusing to direct a verdict of not guilty. For this error the judgment of the municipal court is reversed.

*Judgment reversed.*