THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
ROBERT E. KEARNEY, Defendant-Appellant.

Third District   No. 77-77

Opinion filed December 6, 1977.

Robert Agostinelli and Mary Robinson, both of State Appellate Defender's Office, of Ottawa, for appellant.

Bruce Black, State's Attorney, of Pekin (James E. Hinterlong and Linda M. Vodar, both of Illinois State's Attorneys Association, of counsel), for the People.

Mr. PRESIDING JUSTICE STENGEL delivered the opinion of the Court:

Defendant Robert Kearney appeals from a revocation of his probation by the Circuit Court of Tazewell County. The record indicates that in May of 1976 defendant was sentenced to three years probation after he plead guilty to a charge of theft of a motorcycle. Three months later the State filed a petition to revoke defendants' probation, and in November a hearing was held on an amended petition which alleged that defendant had committed battery and aggravated battery.

To summarize the State's evidence, Bradley Zeone and James Killough were trying to fix Zeone's van which had broken down and had been left

in a store parking lot overnight. After their attempts to fix the van were unsuccessful, they decided to call Zeone's father for a ride home. As they were entering a nearby drug store, a young man, who they later identified as defendant, called to them from the parking lot. They walked to within two or three feet of defendant who asked if he and his girlfriend could hitch a ride. Defendant was holding a beer bottle in his hand and appeared to be drunk. They talked for several minutes, and Zeone said they could not have a ride because the van would not run. As Zeone and Killough started to return to the drug store, Zeone turned around and observed defendant kneeling by the tire of the van. As Zeone and Killough ran back, defendant urinated on the van. Zeone started shouting at defendant and insults were exchanged. Defendant then lunged at Zeone and cut him on the chest with a razor blade. Killough told defendant that he was crazy, and defendant responded, "No one calls me crazy." He then hit Killough in the face with the beer bottle. Defendant chased the two men for a short distance before turning and fleeing. Killough suffered minor injuries, but Zeone's injury required 36 stitches and left a two-inch scar. The entire incident lasted about 10 minutes.

The police arrived within two or three minutes. Zeone and Killough described their assailant's height and build, his clothing, the color of his hair (brownish-blond), and the fact that he appeared to have a deformed or swollen upper lip. On cross-examination, Zeone testified that while it was dark outside at the time of the incident, Vogel's lot was well lighted, and there was an overhead light directly above his van. Both Zeone and Killough identified defendant in court.

After the State rested its case, the parties stipulated that defendant was missing a large number of front teeth on the date of the incident. The court then decided to call Officer Michael Rushford, the investigating police officer, as a court's witness. Rushford had been listed as a potential State's witness and during trial had been excluded from the courtroom along with the other witnesses, but the State did not call him to testify.

Under questioning by the court, Rushford testified that, upon his arrival at the drug store, Zeone and Killough provided roughly the same description of the assailant. However, neither witness was able to select defendant's picture from a group of "mug shot" books which they viewed later that evening. Two weeks later defendant was arrested on an unrelated charge, and Rushford saw that he had much longer hair than indicated by the photograph Zeone and Killough had seen. A more recent picture of the defendant was placed in the middle of one of the five "mug shot" books, and both witnesses positively identified him as their assailant. The photographs of defendant were admitted in evidence for the purpose of showing his appearance on the dates they were taken. Defense counsel

did not object to this evidence nor did he object to the court's decision to examine Rushford. In fact, each side cross-examined Rushford at some length after the court concluded its examination of him.

Defendant's mother then testified that her son did not have a deformed or swollen lip on the night in question. At the conclusion of her testimony the defense rested. The trial court found defendant guilty of violating his probation based on Zeone and Killough's positive identification of him as their attacker.

■■ Defendant contends that the trial court erred in calling Officer Rushford as the court's witness without laying a proper foundation, and cites the well-settled rule that a proper foundation in such case includes a showing why the party desiring the witness cannot vouch for his veracity, and a showing that the testimony of the witness will relate to direct issues and is necessary to prevent a miscarriage of justice. (*People v. Moriarity* (1966), 33 Ill. 2d 606, 615, 213 N.E.2d 516, 521.) These conditions were not met in the case at bar, but we do not agree that a reversal is required.

■■ First, we note that defendant's failure to object to Rushford's testimony in the trial court amounted to a waiver of any error. A defendant cannot claim error where he gave the court no opportunity to correct its ruling. (*People v. Rollins* (4th Dist. 1970), 119 Ill. App. 2d 116, 255 N.E.2d 471.) Furthermore, "plain error" is not involved since defendant has failed to show how he was prejudiced by Rushford's testimony. The court expressly stated that its finding was based on the eyewitness testimony, and thus was not based on Rushford's testimony which dealt with collateral issues. (See *People v. Reddock* (2d Dist. 1973), 13 Ill. App. 3d 296, 300 N.E.2d 31.) The fact that this was a bench trial and that Rushford was called to prevent a miscarriage of justice must also be taken into account. See *People v. Wright* (1969), 42 Ill. 2d 457, 248 N.E.2d 78; *People v. Arnold* (1954), 2 Ill. 2d 92, 116 N.E.2d 882.

■■ Another significant consideration is that this case involves a probation revocation hearing, which is qualitatively different from a criminal trial. (*People v. Beard* (1974), 59 Ill. 2d 220, 319 N.E.2d 745; *People v. Huff* (4th Dist. 1976), 44 Ill. App. 3d 273, 357 N.E.2d 1380.) In *People v. Reese* (1st Dist. 1976), 37 Ill. App. 3d 820, 823, 347 N.E.2d 451, 454, the court said:

> "Undoubtedly the mantle of due process protection extends to probation revocation hearings. However, the same stringent requirements traditionally embodied in the usual prosecution for crime are not required in revocation proceedings. * * * It has been held that revocation proceedings are governed by a flexible concept of due process."

■■ As we interpret these authorities, a departure from the technical rules of evidence in a revocation hearing would not require a reversal if

substantial justice were done. While we do not recommend the procedure followed here, we cannot say that reversible error occurred. Accordingly, we affirm the judgment of the Circuit Court of Tazewell County.

Affirmed.

ALLOY and STOUDER, JJ., concur.